# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PEDRO AGUIRRE ZATISAVAL
Petitioner,

v.

Case No.  8:01-cr-212-T-17TGW
8:07-cv-39-T-17TGW

UNITED STATES OF AMERICA,
Respondent.

_____/

## ORDER DENYING MOTION TO VACATE,
## SET ASIDE, OR CORRECT SENTENCE, PURUSUANT TO 28 U.S.C. § 2255

This cause is before the Court on Pedro Aguirre Zatisaval's Motion to Vacate, Set Aside,

or Correct Sentence, pursuant to 28 U.S.C. § 2255 (Dkt. cv-1; cr-249) and the attached

Memorandum (Dkt. cv-2). The Government filed a response. (Dkt. cv-9). Zatisaval filed a

reply. (Dkt. cv-11).

## PROCEDURAL HISTORY

In August 2001, a grand jury for the Middle District of Florida returned an indictment

charging Zatisaval and four other individuals with two counts:  1) while on board a vessel subject

to the jurisdiction of the United States, conspiring to possess with intent to distribute five

kilograms or more of cocaine, in violation of 46 App. U.S.C. § 1903 and 21 U.S.C. § 960; and,

2) while on board a vessel subject to the jurisdiction of the United States, possessing with intent

to distribute five kilograms or more of cocaine, in violation of 46 App. U.S.C. § 1903 and 21

U.S.C. § 960.  A petit jury found Zatisaval guilty after a three-day trial.  On October 7, 2002, the

court sentenced Zatisaval to 235 months of imprisonment.  (Dkt. cr.-124, cr-130).

Zatisaval appealed, raising the following three issues:

a.      The trial judge abused his discretion and denied Zatisaval a fair trial by his comments and jury instructions.

b.      Given the evidence and testimony at trial, a two-level role reduction was warranted because Zatisaval was merely a drug courier and crew member.

c.      The maximum base offense level, based on the foregoing argument, could be no more than thirty, which would result in a sentence guideline range of 97 to 121 months imprisonment.

The Eleventh Circuit affirmed Zatisaval's conviction and sentence on January 20, 2004. *United States v. Rivas*, 91 Fed.Appx. 654 (11th Cir.). The Supreme Court later vacated Zatisaval's sentence and remanded the case to the Eleventh Circuit for reconsideration of the sentence in light of the ruling in *United States v. Booker*, 543 U.S. 220 (2005). See *Rivas v. United States*, 543 U.S. 1105 (2005). On remand, the Eleventh Circuit reaffirmed Zatisaval's conviction and sentence. *United States v. Rivas*, 132 Fed.Appx. 818. The United States Supreme Court denied certiorari on January 17, 2006. *Rivas v. United States*, 126 S. Ct. 1158 (2006).

Zatisaval's § 2255 motion, signed on January 3, 2007, is timely.

### FACTUAL BACKGROUND

On June 10, 2001, the crew of a C-130 U.S. Coast Guard plane, while flying a counter-drug mission over the Pacific Ocean, noticed the wake of a speedboat. (Dkt. cr-112 at 25-30). Upon descending for a closer look, the crew of the C-130 observed that the 35 foot speedboat was traveling at a high rate of speed and was painted a light blue that matched the color of the ocean. (*Id.* at 32-33; Dkt. cr-113 at 136; *id.* at 174). After the plane passed over the speedboat, the speedboat stopped dead in the water; the plane's captain observed five individuals on the speedboat and numerous items concealed beneath a tarp. (Dkt. cr-112 at 33; *id.* at 35).

While circling the speedboat, the crew of the C-130 radioed U.S. Navy ship U.S.S. Ticonderoga, and the Ticonderoga changed its course toward the speedboat's location. (Dkt. cr-112 at 37-38). Upon the arrival of the Ticonderoga, the speedboat sped away from the ship. (Dkt. cr-112 at 39-41; Dkt. cr-113 at 106). The crew of the C-130 observed as many as three individuals throwing square white bales, which were located beneath the tarp, overboard. (Dkt. cr-112 at 41-45, 50: cr-113 at 64-65). Ten to fifteen minutes later, the speedboat stopped; the C-130's captain observed smoke coming from the speedboat's engine and the C-130's crew noticed that the cargo on the speedboat was completely gone, along with the tarp. (Dkt. cr-112 at 53-55: Dkt. cr-113 at 65, 94). A Navy helicopter was dispatched from the Ticonderoga and the pilot, while flying towards the speedboat, observed sixty to seventy white bales floating in the speedboat's debris trail, each within twenty to thirty yards of the other. (Dkt. cr-113 at 123-125).

In the meantime, the Ticonderoga sent out a four-member Coast Guard boarding party in a small inflatable vessel. (Dkt. cr-113 at 139-41). The boarding party hailed the speedboat in both English and Spanish, but received no response. (Dkt. cr-113 at 141-42). Once the boarding party came alongside the speedboat, an officer asked, in Spanish, the five men on the speedboat, to place their hands on their heads. (Dkt. cr-113 at 144). The men complied and the officer then asked each of the individuals where he was from and who owned the speedboat. (Dkt. cr-113 at 144). Each individual stated that he was from Tumaco, Columbia and that the owner was not aboard. (Dkt. cr-113 at 145). When asked the purpose of their voyage, each man responded that he was "fishing." (Dkt. at 145). The boarding party requested each man to approach, handcuffed him, and gave him a lifejacket to wear. (Dkt. at cr-113 at 145-46).

After three of the five men had been handcuffed and given lifejackets, the boarding party noticed that the speedboat was flooding with water at a "moderate to rapid" rate because of three small holes in the hull that appeared to be holes whose purpose was to sink the speedboat. (Dkt. cr-113 at 145-46; cr-114 at 19-21). In reaction, the boarding party tied the sinking speedboat to the Ticonderoga and brought the "fisher" men aboard the ship. (Dkt. cr-113 at 146). The Spanish-speaking officer asked the men when they had left Columbia and when they expected to return; they all replied that they had left on June 5, 2001, and expected to return on June 15, 2001. (Dkt. cr-113 at 153-154). Before the speedboat completely sank, the boarding party searched the speedboat for registration papers. (Dkt. cr-113 at 146). They found a cooler with fruit and Gatorade, three fuel filters, empty gas cans, a radio, duffel bags with personal items, a machete, and two chickens in a basket. (cr-114 at 22-23). However, the boarding party found no registration, no identification documents, and no fishing gear, bait, fish, or rescue gear. (Dkt. cr-113 at 146-52). Even though the boarding party attempted to keep the speedboat from sinking, it sank about an hour later. (Dkt. cr-114 at 23).

Swimmers dispatched from the Ticonderoga retrieved twenty-two square white bales from the debris trail of the speedboat. (Dkt. cr-113 at 169-170). Each bale contained twenty-five kilogram packages of cocaine which had a street value at the time of between fifteen and twenty thousand dollars. (Dkt. cr-113 at 172-173; Dkt. cr-114 at 35).

At trial, defense counsel challenged government witnesses on cross-examination concerning their testimony about the white bales allegedly tossed from the boat. The witnesses conceded that they could not clearly identify the men who threw the bales overboard. (Dkt. cr-112 at 119; cr-113 at 24, 102, and 118). After the government rested its case, defense counsel moved for a judgment of acquittal pursuant to Rule 29 of Federal Rules of Criminal Procedure.

(Dkt. cr-114 at 37).  The court denied the motion.  (Dkt. cr-114 at 42-43).  The court asked

defense counsel if he were going to offer any witnesses and counsel replied that he would not

present witnesses and that Zatisaval would not testify.  (Dkt. 114 at 44-48).  During his closing

argument, Zatisaval's counsel challenged the evidence presented as well as the credibility of the

government's witnesses.  (Dkt. cr-115 at 19-25).  Specifically, counsel pointed out variances

among testimony of the government's witnesses concerning the number of individuals observed

on the speedboat.  Counsel also reiterated the fact that none of the witnesses actually observed

the cocaine being thrown from the speedboat.  (Dkt. cr-115 at 22-23).

## DISCUSSION

Zatisaval raises three issues in his Motion to Vacate, Set Aside, or Correct Sentence,

Pursuant to 28 U.S.C. § 2255 (Dkt. cv-1) and the accompanying Memorandum (Dkt. cv-2).

First, Zatisaval claims that the government obstructed justice by not introducing at trial

videotapes taken from the helicopter that Zatisaval claims would show that he is innocent;

second, Zatisaval claims that his counsel was deficient and ineffective since he did not present

these videotapes at trial; and third, Zatisaval claims that his sentence constitutes plain error in

light of *Booker/Blakely*.

## I.     INEFFECTIVE ASSISTANCE OF COUNSEL

Zatisaval's main argument is that his Sixth Amendment right to counsel was violated.

Zatisaval argues that he had ineffective assistance of counsel during trial.  He bases his argument

on his counsel's decision not to introduce the videotapes at trial (Dkt. cv-2 at 16-19).

A lawyer is presumed to be competent to assist a defendant and the burden is on the

defendant to demonstrate that his lawyer has been ineffective. *United States v. Cronic*, 466 U.S.

648, 658 (1984).  A conviction will be vacated on ineffective assistance of counsel grounds if the

defendant can prove (1) that counsel's performance fell below an objective standard of reasonable professional assistance, and (2) the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A defendant is required to prove both prongs of the *Strickland* test and a failure to prove one will result in a rejection of the claim. *Id.* at 697.

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1313-14 (11th Cir. 2000)(quoting *Strickland*, 466 U.S. at 689 and *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)). Where a record is incomplete or unclear, counsel's actions are presumed to be an exercise of reasonable professional judgment. *Chandler*, 218 F.3d at 1314-135 n. 15.

Zatisaval fails to prove that his counsel's performance was deficient. Zatisaval's counsel is permitted to advance his case based upon reasonable legal strategy, which includes the introduction or non-introduction of evidence for strategic or tactical reasons. Again, Zatisaval admits that both his counsel and he received and reviewed the videotapes before trial. Zatisaval also knew that the videotapes were not going to be introduced and failed to object to the decision not to introduce the videotapes at the time of trial. (Dkt. cr-164 at 12-13). The choice not to introduce the videotapes at trial was a strategic decision made by Zatisaval and his counsel. Such strategic decisions are not outside accepted professional conduct. Counsel exercised reasonable professional judgment and followed sound trial strategy. Zatisaval has also failed to show prejudice by not having the videotapes introduced. The strength of eyewitness testimony

and other evidence presented at trial was significant. Therefore, Zatisaval cannot be granted relief on a claim of ineffective assistance of counsel because the claim lacks merit.

## II.    ACTUAL INNOCENCE

In connection with the ineffective assistance of counsel argument, Zatisaval also claims that the videotapes, if presented at trial, would have shown that he was actually innocent. In order to warrant relief under a theory of actual innocence, a petitioner must show that "'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998)(quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). In order for a claim of actual innocence to be credible, it must be based on reliable evidence not presented at trial. *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002); see also *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

The videotapes, even if introduced at trial, would not have shown Zatisaval's actual innocence. The videotape does not contradict the extensive eyewitness testimony as the petitioner claims it does. The C-130 plane pilot testified that he saw the crew of the speedboat throwing white bales overboard. (Dkt. cr-112 at 41-42). The fact that the videotapes do not show Zatisaval throwing the cocaine overboard does not alone prove that he is actually innocent. With the extensive eyewitness testimony and other evidence presented at trial, Zatisaval has failed to prove that "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. Zatisaval has failed to meet his burden of actual innocence and therefore he can be afforded no relief for this claim.

## III.    *BOOKER/BLAKELY* ISSUE

Zatisaval raises the *Booker* issue in order to preserve the issue for review by the Supreme Court in case it is necessary to seek *certiorari* in the instant case. When a matter on direct appeal

is decided adversely to a defendant, then it cannot be re-litigated under § 2255. *United States v. Nyhuis*, 211 F.2d 1340, 1343 (11th Cir. 2000).

There is no need for any further review under *Booker/Blakely*. Zatisaval appealed to the Supreme Court and, in 2005, the Supreme Court remanded the case to the Eleventh Circuit instructing the Eleventh Circuit to reconsider the case in light of *United States v. Booker*, 543 U.S. 220 (2005). *Rivas v. United States*, 543 U.S. 1105 (2005). On remand, the Eleventh Circuit affirmed Zatisaval's conviction and sentence and stated that "any possible claim based on the Supreme Court's recent decisions in *Booker* has been abandoned" because he had not raised constitutional challenges to the sentence. *United States v. Rivas*, 132 Fed.Appx. 818. The Eleventh Circuit has already decided that any *Booker* issue that Zatisaval may raise has been abandoned and therefore the issue cannot be re-litigated under § 2255.

Even under an ineffective assistance of counsel theory, the Zatisaval does not have a *Booker/Blakely* claim. A counsel is not deemed deficient because he does not raise an issue that lacks merit or he does not anticipate changes in the law. *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028 (11th Cir. 1994). Zatisaval's counsel raised all issues relevant at the time and could not have anticipated the Supreme Court's decision in *Booker*. Zatisaval was sentenced in October of 2002 and *Booker* was decided January 12, 2005. Zatisaval's counsel could not have foreseen the *Booker* decision. Therefore, Zatisaval cannot make a *Booker/Blakely* claim based on an ineffective assistance of counsel theory.

## IV.    OBSTRUCTION OF JUSTICE

Zatisaval also argues that the government obstructed justice by failing to introduce the videotapes at trial taken from the Navy helicopter which, he claims, show his innocence of the

drug-related charges. (Dkt cv-2 at 11). Zatisaval claims that neither of the videotapes shows any evidence that bales of cocaine were on board the speedboat and that the first videotape contradicts various statements made that bales of cocaine were thrown overboard once the Ticonderoga became visible. (Dkt cv-2 at 11). He argues that the tapes would show that there is no way that the bales of cocaine could have come from his speedboat and that by not admitting them at trial, the government obstructed justice. (Dkt. cv-2 at 12-15). Zatisaval requests an evidentiary hearing based on the videotapes. (Dkt. 2 at 14-15).

When requesting an evidentiary hearing, a petitioner has the burden of establishing a need for the hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984); see also *Routley v. Singletary*, 33 F.3d 1279, 1284 (11th Cir. 1994). A petitioner may be granted a federal evidentiary hearing if he can show cause for his failure to develop facts in court proceedings and that the failure to develop these facts resulted in actual prejudice. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 12 (1992). The Supreme Court also stated that the narrow exception to the cause-and-prejudice rule is if the petitioner can show that the lack of proper development of the facts in the court proceedings resulted in a "fundamental miscarriage of justice". *Id.* at 12; see also *Townsend v. Sain*, 372 U.S. 293 (1963) (holding that a petitioner is entitled to an evidentiary hearing only if he alleges facts which, if proved, would entitle him to relief). If a 2255 motion lacks merit because the allegations, even if proven true, would not afford a petitioner relief, the motion may be summarily dismissed; however, if there is potential merit to the allegations supported by the record, then there must be more than a summary dismissal. *Broadwater v. United States*, 292 F.3d 1302, 1303-1304 (11th Cir. 2002). When the record establishes that a § 2255 claim lacks merit, no evidentiary hearing is required. *See United States v. Lagrone,* 727 F.2d 1037, 1038 (11th Cir. 1984).

9

There is no need for an evidentiary hearing regarding the videotapes because Zatisaval's claim lacks merit. Zatisaval admits that his counsel received and watched the videos before trial. (Dkt. cv-1 at 5). As stated previously in this opinion, both Zatisaval's counsel and the government are allowed to make strategic decisions with regard to what is and is not presented during trial. The testimony at trial was internally consistent and, despite Zatisaval's claim, the videotape does not contradict the testimony. Zatisaval's claim of ineffective assistance of counsel lacks merit because counsel was not deficient and because Zatisaval cannot show prejudice. There is no merit to the allegation of actual innocence and there is no fundamental miscarriage of justice in this case. Since Zatisaval's § 2255 motion lacks any potential merit, there is no need for an evidentiary hearing. Accordingly it is

ORDERED that Zatisaval's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. cv-1; cr-249) is denied with prejudice. The Clerk is directed to enter judgment against Zatisaval in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A COA may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S.

10

322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S 880, 893 n. 4 (1983)).  Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**ORDERED** in chambers at Tampa, Florida on this 12th day of October, 2007.


ELIZABETH A. KOVACHEVICH
United States District Judge

AUSA:  Jeffrey S. Downing
Pedro Aguirre Zatisaval